MATTER OF RUSSELL, *et al.*

In Visa Petition Proceedings

A-13768161-2-3

*Decided by Deputy Associate Commissioner-September 7, 1965*

Petition to accord beneficiaries nonquota status as eligible orphans, as defined in section 101(b)(1)(F), Immigration and Nationality Act, as amended, is denied since the petitioner and his spouse, on the basis of the results of the guidance, supervision and care accorded their 16-year-old daughter, who was a disciplinary problem at the Navy Dependents' School in the Philippines, have not established pursuant to section 205(b) of the Act, that they will properly care for the beneficiaries if they are admitted to the United States.

These cases have been certified to the Deputy Associate Commissioner, Travel Control.

The petitions were denied by the District Director, Manila, Philippine Islands, on June 21, 1965, on the ground that it has not been satisfactorily established that the petitioner and spouse will properly care for the children if they are admitted to the United States (section 205(b) of the Immigration and Nationality Act).

The petitioner and his spouse, citizens of the United States, were married on August 22, 1962. No children were born of this union but the daughter, Karen, born in Los Angeles, California, on May 12, 1949, the issue of a legally terminated marriage of the petitioner's spouse, is said to have been adopted by the petitioner. The Director of the American Red Cross Unit at the United States Naval Base at Subic Bay, Philippine Islands, acting as a representative of the International Social Service, has submitted a favorable home study report. The California State Department of Public Welfare at Los Angeles has certified that the preadoption requirements of that State have been met. Overseas investigation of the mental and physical health of the beneficiaries reveals no illnesses or defects aside from an exposure of two of them to tuberculosis suffered by their natural mother which has not been shown to have developed so far in the children.

The beneficiaries, two half-sisters and a half-brother, were born respectively at Angeles, Pampanga, Philippine Islands, on October 28, 1958, December 6, 1962, and February 12, 1960, out of wedlock to Victoria C. Bucao, a native and citizen of the Philippines, as a result of relationships with three different members of the United States Armed Forces stationed there. They were released to the petitioner and his spouse for adoption and emigration by the natural mother who, it has been established, is unable to care for and support them. The petitioner and his spouse have presented a final adoption decree relating to all three beneficiaries, issued March 30, 1965, by the Municipal Court of San Felipe, Province of Zambales, Philippine Islands. The court is some distance removed from the station of the petitioners and hometown of the beneficiaries.

Article 335 of the Civil Code of the Philippines sets forth:

Art. 335. The following cannot adopt:
(1) Those who have legitimate, legitimated, acknowledged natural children, or natural children by legal fiction; * * *
(4) Non-resident aliens.

The decree recites the petitioners to be residents of the Province of Zambales, Philippine Islands, and to have no children. The District Director has pointed out that the petitioner and his spouse were admitted to the Philippines in December 1962 pursuant to military orders of the United States Navy in which organization the petitioner has been enlisted since 1954. It was noted that the petitioner and spouse occupied United States Government quarters on the United States Naval Base at Subic Bay and under agreements of long standing with the Government of the Philippines are accorded certain tax exemptions and free of duty importation privileges not ordinarily granted to residents of that country. Nor were members of the United States Armed Forces subject to the criminal jurisdiction of Philippine courts at the time of the adoption. This has lead to the conclusion on the part of the District Director that the petitioner and his spouse are "non-resident aliens", for the purpose of Article 335 cited above. However, the record is silent as to whether members of United States Armed Forces may for adoption purposes be considered by the courts of that country under any circumstances as eligible.

The District Director also notes that the petitioner and spouse are the parents of the sixteen-year-old child, Karen. The petitioners have related that because of the imminence of their departure for the United States on military orders, and because their attorney was a friend of the judge, the decree was issued and any apparent irregularities therein could have been the result of language difficulties

between themselves, their attorney, and the court. There is not contained in the record the petition of March 3, 1965, apparently presented to the court which resulted in the adoption decree of March 30, 1965. Nor is it shown in the record if the daughter of his spouse has actually been adopted by the petitioner and whether such adoption, or lack of it, if before the court, could have come within an exception to Article 335 cited above. Therefore, without further inquiry, it cannot be concluded that the decree of the court is or is not on all fours with the statute.

The petitioner and spouse, having been informed by the District Director of possible invalidity of the Philippine adoption decree, are presently considering adoption of the children in California. As heretofore stated, the California authorities have certified that they meet the preadoption requirements of that State.

The spouse of the petitioner was revealed to have been arrested on April 11, 1960, by the Los Angeles, California, police and charged with "assault with a deadly weapon". On May 13, 1960, she was convicted in the Los Angeles Municipal Court on the reduced charge of "battery", and sentenced to thirty days in the city jail, suspended, placed on probation for one year, fined $26.25, and ordered to make restitution. The charges appear to have come about following an altercation late one night with a person thought by her to be responsible for impounding her automobile and in which she struck the complainant about the head and wrist with her high-heeled shoe.

United States Naval authorities in the Philippines have reported that the sixteen-year-old daughter of the petitioner and his spouse was a disciplinary problem at the Navy Dependents' School, broke curfew, was found by Naval police in company with adult members of the Marine Corps in bars and night clubs, and required medical treatment at the Naval Hospital from January 20-24 and October 22, 1964, because of her social behavior. It can be fairly concluded that this child did not receive the degree of parental supervision customarily to be expected. There is nothing on which to base a belief that more could or would be extended to the three beneficiaries in spite of assurances by the petitioner and his spouse that Karen is now a much wiser, socially adjusted teen-ager.

The District Director also noted that the affidavit of support executed April 12, 1965, by the petitioner set forth that he owned a house unencumbered by mortgage. It was subsequently ascertained that the house is mortgaged. The petitioner urges only that "as for my real estate statement, there was a misinterpertation (sic) of the fact." However, an examination of the affidavit in question makes

it apparent that he could well have innocently not correctly interpreted the questions involved.

Section 205(b) of the Immigration and Nationality Act provides in part as follows:

... No petition for nonquota immigrant status in behalf of a child as defined in section 101(b)(1)(F) shall be approved by the Attorney General unless the petitioner establishes to the satisfaction of the Attorney General that the petitioner and spouse will care for such child properly if he is admitted to the United States ...

The desired adoption by the petitioner and his spouse and the bringing of these waifs into their home in the United States is indeed a praiseworthy intention. On the basis of the record presented here, the petitioner and his spouse do have the best intentions for these children. However, on the evidence of the results of the guidance, supervision and care of their teen-age child by the petitioner and his spouse, it has not been established that the petitioner and his spouse will properly care for the children if they are admitted to the United States. Therefore, the decision of the District Director that the petitions be denied on that ground is affirmed.

ORDER: It is ordered that the decision of the District Director be affirmed.